Laura K. Smith, Texas Bar No. 2405430
Attorney for Individual Federal Defendants
P.O. Box 7146
Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-0419
Fax: (202) 616-4314
Laura.smith2@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ESTATE OF JAMES D. REDD, | |
| Plaintiff, | |
| v. | No. 2:11-cv-478-TS |
| DANIEL LOVE, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF THE INDIVIDUAL
<u>FEDERAL DEFENDANTS' CONSOLIDATED MOTIONS TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xviii

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xx

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    Qualified immunity defeats all of Plaintiff's constitutional claims.. . . . . . 2

        A.    Plaintiff has not alleged facts to support that each individual defendant was personally involved in the alleged constitutional violations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    Qualified immunity precludes Plaintiff's Fourth (Counts 1-9), Fifth (Counts 10-13), Sixth (Count 14), Eighth (Counts 15 and 16), and Fourteenth (Count 17) Amendment claims... . . . . . . . . . . . . . . . . . 8

            1.    Qualified immunity bars Plaintiff's Fourth Amendment claims (Counts 1-9)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                a.    Defendants are entitled to qualified immunity with respect to the challenged search and seizure.. . . . . . 9

                b.    Defendants are entitled to qualified immunity as to the manner in which the arrest and search were conducted.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                c.    Qualified immunity bars any excessive force claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Qualified immunity defeats Plaintiff's Fifth and Sixth Amendment claims (Counts 10-14).. . . . . . . . . . . . . . . . 18

                a.    The Fifth Amendment equal protection claims fail (Counts 10, 11, and 14).. . . . . . . . . . . . . . . . . . . . 19

                b.    Qualified immunity bars the "takings" claim (Count 12).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        c.    Qualified immunity defeats Plaintiffs' right-to-counsel and self-incrimination claims (Counts 13 and 14). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      3.    Qualified immunity precludes Plaintiff's Eighth Amendment (Counts 15 and 16) and Fourteenth Amendment (Count 17) claims.. . . . . . . . . . . . . . . . . . . 23

II.    *Heck v. Humphrey* mandates rejection of any claim based on the decision to search the Redds' home and any claim for "unlawful taking" of items seized there.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.    The Tucker Act precludes implication of a *Bivens* remedy.. . . . . . . . . . . 27

VI.    This Court lacks personal jurisdiction over Defendants Kice and McTighe. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## CASES

*AAA Pharmacy, Inc. v. Palmetto GBA, LLC,*
   No. 07-1221, 2008 WL 5070958 (W.D. Okla. Nov. 25, 2008). . . . . . . . . . . . . . . . . 28

*Albright v. Oliver,*
   510 U.S. 266 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Allen v. Briggs,*
   331 Fed. Appx. 603 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

*Anoushiravani v. Fishel,*
   No. 04-212, 2004 WL 1630240 (D. Or. Jul. 19, 2004). . . . . . . . . . . . . . . . . . . . . . 29

*Apodaca v. City of Albuquerque,*
   443 F.3d 1286 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v.
Knowles,*
   87 F.3d 413 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Arce v. Banks,*
   913 F. Supp. 307 (S.D.N.Y. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ashcroft v. Al-Kidd,*
   131 S. Ct. 2074 (2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix, 1, 2, 5,

*Bailey's Bakery, Ltd. v. Continental Baking Co.,*
   235 F. Supp. 705 (D.C. Hawaii), *aff'd,* 401 F.2d 182 (9th Cir. 1968). . . . . . . . . . . . . 7

*Baldridge v. McPike, Inc.,*
   466 F.2d 65 (10th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Barney v. Pulsipher,*
   143 F.3d 1299 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bayou Des Familles Dev. Corp. v. United States Corps of Eng'rs,*
   541 F. Supp. 1025 (E.D. La.), *aff'd,* 709 F.2d 713 (5th Cir.), *cert.
   denied,* 465 U.S. 1065 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Becerra ex re. Perez v. Unified Government of Wyandotte Cty.*,
  342 F. Supp. 2d 974 (D. Kan. 2004), *rev'd on other grounds*, 432 F.3d
  1163 (10th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Begay v. Public Service Co. of N.M.*,
  710 F. Supp. 2d 1161 (D.N.M. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bell Helicopter Textron, Inc. v. Heligwest Intern., Ltd.*,
  385 F.3d 1291 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Bennett v. Passic*,
  545 F.2d 1260 (10th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Berry v. City of Muskogee, Okl.*,
  900 F.2d 1489 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

* *Bowman v. Dozier*,
  73 Fed. Appx. 219 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bradford v. Wiggins*,
  516 F.3d 1189 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

* *Bridges v. Lane*,
  351 Fed. Appx. 284 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Brooks v. Sauceda*,
  85 F. Supp. 2d 1115 (D. Kan. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Brothers v. Custis*,
  886 F.2d 1284 (10th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brown v. Booker*,
  No. 07-3103, 2008 WL 215723 (D. Kan. Jan. 24, 2008). . . . . . . . . . . . . . . . . 22

*Brown v. District of Columbia*,
  514 F.3d 1279 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bryson v. Gonzales*,
  534 F.3d 1282 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Bush v. Lucas,*
    462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Chappell v. Wallace,*
    462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Chavez v. Martinez,*
    538 U.S. 760 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Clouser v. Espy,*
    42 F.3d 1522 (9th Cir. 1994), *cert. denied,* 515 U.S. 1141 (1995). . . . . . . . . . . . . . 28

* *Cobello v. Pelle ex re. Boulder Cty. Bod. of Com'rs,*
    No. 06-02600, 2008 WL 926522 (D. Colo. Mar. 31, 2008). . . . . . . . . . . . . . . . . . . . 7

* *Coleman v. Craig,*
    No. 88-1401, 1991 WL 42291, *aff'd,* 951 F.2d 1258 (10th Cir. 1991) (table). . . . . . . 7

*Corbin v. Cannon,*
    838 F. Supp. 561 (M.D. Fla. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cortez v. McCauley,*
    478 F.3d 1108 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Crosby v. Paulk,*
    187 F.3d 1339 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cruz v. City of Laramie, Wyo.,*
    239 F.3d 1183 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Curley v. Klem,*
    499 F.3d 199 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. Hill,*
    173 F. Supp. 2d 1136 (D. Kan. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Davis v. Scherer,*
    468 U.S. 183 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dennis v. Watco Companies, Inc.,*
    631 F.3d 1303 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

* *Dexter v. Ford Motor Co.,*
    92 Fed. Appx. 637 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dine Citizens Against Ruining Our Environment v. Klein*,
   747 F. Supp. 2d 1234 (D. Colo. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dohaish v. Tooley*,
   670 F.2d 934 (10th Cir.), *cert. denied*, 459 U.S. 826 (1982) . . . . . . . . . . . . . . . . . . . 20

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*
   514 F.3d 1063 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Durre v. Dempsey*,
   869 F.2d 543 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ealum v. Schirard*,
   46 Fed. Appx. 587 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Eastern Enter. v. Aphel*,
   524 U.S. 498 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*,
   407 F.3d 1091 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Engle v. Mecke*,
   24 F.3d 133 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxiii

*FDIC v. Meyer*
   510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

** *F.E. Scrase v. Dickinson*,
   No. 09-02398, 2011 WL 3714632 (D. Nev. Aug. 24, 2011) . . . . . . . . . . . . . . . . . . . 29

*Fisher v. City of Las Cruces*,
   584 F.3d 888 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Foote v. Spiegel*,
   118 F.3d 1416 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Estate of Fuentes ex rel. Fuentes v. Thomas*,
   107 F. Supp. 2d 1288 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
   130 F.3d 1381 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

*Gallagher v. Shelton*,
   587 F.3d 1063 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Graham v. Connor,*
490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

*Hackford v. Babbitt,*
14 F.3d 1457 (10th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hampel v. City of Wichita,*
No. 06-1091-JTM, 2006 WL 3240926 (D. Kan. Nov. 7, 2006). . . . . . . . . . . . . . . . 23

*Harris v. Koenig,*
722 F. Supp. 2d 44 (D.D.C. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heck v. Humphrey,*
512 U.S. 477 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Helicopteros Nacionales v. Hall,*
466 U.S. 408 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Herring v. Keenan,*
218 F.3d 1171 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hewitt v. Truth or Consequences,*
758 F.2d 1375 (10th Cir.), *cert. denied*, 474 U.S. 844 (1985). . . . . . . . . . . . . . . . . 23

** *Hill v. Walk,*
No. 2:09-cv-218, 2011 WL1233198 (D. Utah Mar. 31, 2011). . . . . . . . . . . . . . . . 16

** *Holgers v. South Salt Lake City,*
No. 10-532, 2011 WL 98488 (D. Utah Jan. 12, 2011). . . . . . . . . . . . . . . . . . . . . . 7

*Holland v. Harrington,*
268 F.3d 1179 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Holt v. United States,*
46 F.3d 1000 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hovater v. Robinson,*
1 F.3d 1063 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Howards v. McLaughlin,*
634 F.3d 1131 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Hunter v. Bryant,*
502 U.S. 224 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ingraham v. Wright,*
     430 U.S. 651 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Intercon., Inc. v. Bell Atl. Internet Solutions,*
     205 F.3d 1244 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Jensen v. Wagner,*
     603 F.3d 1182 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Liberty Mut. Fire Ins. Co.,*
     648 F.3d 1162 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Johnson v. Lindon City Corp.,*
     405 F.3d 1065 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*\* Johnson v. Pottawotomie Tribal Police Dept.,*
     411 Fed. Appx. 195 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Kirihara v. Bendix Corp.,*
     206 F. Supp. 72 (D. Hawaii 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

*Kizas v. Webster,*
     707 F.2d 524 (D.C. Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*\* Kortlander v. Cornell,*
     No. 10-155, 2011 WL 4036143 (D. Mont. Sept. 12, 2011). . . . . . . . . . . . . . . . . 23, 28

*Larsen v. State Employees' Retirement System,*
     553 F. Supp. 2d 403 (M.D. Pa. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lawrence v. Kenosha County,*
     391 F.3d 837 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Livent, Inc. Noteholders Secs. Litigation,*
     151 F. Supp. 2d 371 (S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

*\* Lloyd v. United States,*
     No. 99-3347, 1999 WL 759375 (N.D. Ill. Sept. 3, 1999). . . . . . . . . . . . . . . . . . . 27

*\*\* Lucas v. City of Boston,*
     No. 07-10979, 2009 WL 1844288 (D. Mass. June 19, 2009). . . . . . . . . . . . . . . . 17

*Lowery v. Stovall,*
     92 F.3d 219 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

* *Lynn v. Kunen*,
  1998 WL 1173, 162 F.3d 1173 (10th Cir. Oct. 19, 1998). . . . . . . . . . . . . . . . . . . . . . 5

*Marin v. City of Albuquerque*,
  375 F. Supp. 2d 1128 (D.N.M. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

** *McGee v. United States*,
  No.08-154, 2009 WL 909589 (W.D. Mich. Mar. 31, 2009). . . . . . . . . . . . . . . . . . 26

*McNair v. Coffey*,
  279 F.3d 463 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Moss v. Gillioz Const. Co.*,
  206 F.2d 819 (10th Cir. 1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

*Muhammad v. Close*,
  540 U.S. 749 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

* *Munns v. Clinton*,
  No. 10-00681, 2011 WL 4566004 (E.D. Cal. Sept. 29, 2011). . . . . . . . . . . . . . . . 29

** *Murdock v. Walker-Shedd*,
  No. 11-0391, 2011 WL 2939409 (N.D. Okla. Jul. 19, 2011). . . . . . . . . . . . . . . . . 20

*In re Musicland Holding Corp.*,
  386 B.R. 428 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Naumoff* v. *Old*,
  167 F. Supp.2d 1250 (D. Kan. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

* *Neidig v. Rendina*,
  298 Fed. Appx. 115 (3rd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Neitzke v. Williams*,
  490 U.S. 319 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

*New Hampshire v. Maine*,
  532 U.S. 742 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Oliver v. State of Okla.*,
  211 F.3d 1279 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

*Pace v. Swerdlow*,
  519 F.3d 1067 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Palazzolo v. Rhode Island*,
  533 U.S. 606 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pearson v. Callahan*,
  555 U.S. 223 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Pena-Borrero v. Estremeda*,
  365 F.3d 7 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*\* Penland v. Carolina First Bank*,
  No. 07-3109, 2008 WL 1736858 (D.S.C. Apr. 15, 2008). . . . . . . . . . . . . . . . . . . . 26

*\* Peterson v. Lowry*,
  No. 97-35795, 1998 WL 479427 (9th Cir. Jul. 24, 1998). . . . . . . . . . . . . . . . . . . . 25

*Petrini v. Howard*,
  918 F.2d 1482 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Phillips v. James*,
  422 F.3d 1075 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*\* Powell v. Keller*,
  No.07-121, 2007 WL 4139645 (W.D.N.C. Nov. 15, 2007). . . . . . . . . . . . . . . . . . . 26

*Pro Fit Management v. Lady of America Franchise Corp.*,
  No. 08-2662, 2010 WL 4810227 (D. Kan. Nov. 19. 2010).. . . . . . . . . . . . . . . . . . . 31

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*,
  847 F.2d 642 (10th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reeves v. Churchich*,
  331 F. Supp. 2d 1347 (D. Utah 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reeves v. Churchich*,
  484 F.3d 1244 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reindl v. City of Leavenworth, Kansas*,
  443 F. Supp.2d 1222 (D. Kan. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reunion, Inc. v. F.A.A.*,
  719 F. Supp. 2d 700 (S.D. Miss. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Richard v. Hinson,*
    70 F.3d 415 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Rochin v. California,*
    342 U.S. 165 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

* *Ruttenburg v. Jones,*
    283 Fed. Appx. 121 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sager v. City of Woodland Park.,*
    543 F. Supp. 282 (D.C. Colo. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Saucier v. Katz,*
    533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schiff v. Kerrigan,*
    625 F. Supp. 704 (D. Conn. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*Matter of Search of Premises Known as 6455 South Yosemite,*
    897 F.2d 1549 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

*Sharrar v. Felsing,*
    128 F.3d 810 (3d Cir. 1997), *abrogated on other grounds*, 499 F.3d 199 (3d Cir.
    2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shero v. City of Grove, Okl.,*
    510 F.3d 1196 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Shrader v. Biddinger,*
    633 F.3d 1235 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

* *Silvan v. Briggs,*
    309 Fed. Appx. 216 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Simkins v. Bruce,*
    406 F.3d 1239 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sinochem Intern. Co. v Malaysia Intern. Shipping,*
    549 U.S. 422 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Slayton v. Willingham*,
    726 F.2d 631 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

\* *Smith v. Freestone*,
    188 F.3d 519 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Millet*,
    No. 07-723, 2009 WL 3181996 (D. Utah Sept. 28, 2009). . . . . . . . . . . . . . . . 5, 10, 26

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Song v. PIL, LLC*,
    640 F. Supp. 2d 1011 (N.D. Ill 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\*\* *Stepka v. Jonsgaard*,
    No. 10-00320, 2011 WL 2883375 (D. Colo. Jul. 18, 2011). . . . . . . . . . . . . . . . . . 15

\* *Stuart v. Jackson*,
    24 Fed. Appx. 943 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tanberg v. Sholtis*,
    401 F.3d 1151 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\* *Teufel v. United States*,
    5 F.3d 547 (10th Cir. Aug. 26, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

\* *Thomas v. City of Snyder*,
    103 F.3d 145 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

\* *Thomson v. Salt Lake County*,
    No. 05-352, 2006 WL 3254471 (D. Utah), *aff'd*, 584 F.3d 1304 (10th
    Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*Toevs v. Reid*,
    646 F.3d 752 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trotter, Inc. v. Watkins*,
    869 F.2d 1312 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Trujillo* v. *Williams*,
    465 F.3d 1210 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Two Guys from Harrison-Allentown, Inc. v. McGinley*,
    179 F. Supp. 944 (D.C. Pa. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

xiii

*Twombly v. Bell Atlantic Co.*,
550 U.S. 544 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 6, 7, 9

*United States v. Ahidley*,
486 F.3d 1184 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

*United States v. Brown*,
287 F.3d 965 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Green*,
33 F.Supp.2d 203 (W.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Green*,
178 F.3d 1099 (10th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Musson*,
802 F.2d 384 (10th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Neff*,
300 F.3d 1217 (10th Cir.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Perdue*,
8 F.3d 1455 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Pratt*,
355 F.3d 1119 (8th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Uribe-Galindo*,
990 F.2d 522 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

* *United States v. Valenzuela*,
231 Fed. Appx. 785, (10th Cir.), *cert. denied*, 552 U.S. 910 (2007). . . . . . . . . . 14, 15

*Verdecia v. Adams*,
327 F.3d 1171 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vondrak v. City of Las Cruces*,
535 F.3d 1198 (10th Cir.), *cert. denied*, 129 S. Ct. 1003 (2009). . . . . . . . . . . . . . 15

* *VanZandt v. Okla. Dept. Of Human Servs.*,
276 Fed. Appx. 843 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wegerer v. First Commodity Corp. of Boston*,
744 F.2d 719 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*White-Ruiz v. City of New York,*
    983 F. Supp. 365 (S.D.N.Y. 1997)............................................. 6

\* *Whitewater v. Goss,*
    192 Fed. Appx. 794 (10th Cir. 2006)......................................... 13

*Whren v. United States,*
    517 U.S. 806 (1996)............................................................... 12

*Wilkie v. Robbins,*
    551 U.S. 537 (2007)........................................................... 26, 27

*Williams v. Berney,*
    519 F.3d 1216 (10th Cir. 2008)................................................ 5

*Willowbrook v. Olech,*
    528 U.S. 562 (2000)............................................................... 19

*Wilson v. Layne,*
    526 U.S. 603 (1999)............................................................... 16

\*\* *Wims v. New York City Police Dept.,*
    No. 10-6128, 2011 WL 2946369 (S.D.N.Y. Jul. 20, 2011)............... 17

*Winton v. Board of Com'rs of Tulsa Cty., Okl.,*
    88 F. Supp. 2d 1247 (N.D. Okla. 2000)..................................... 7

*Wittmann v. United States,*
    37 Fed. Cl. 239 (1997)........................................................... 29

*Workman v. Jordan,*
    958 F.2d 332 (10th Cir. 1992).................................................. 2

*World-Wide  Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)............................................................... 30

*In re Young,*
    141 F3d 854 (8th Cir. 1998), *cert. denied,* 525 U.S. 811 (1998). ................ 24

## STATUTES

28 U.S.C. §1346(a)(2)..................................................................... 28

Tucker Act, 28 U.S.C. § 1491 ........................................................ xix, 28

28 U.S.C. § 2676. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxiii

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20, 22

**RULES**

Fed. R. Civ. P. 11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. Civ. P. 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**MISCELLANEOUS**

2-8 Moore's Federal Practice – Civil § 8.04[4]. . . . . . . . . . . . . . . . . . . . . . . . . . . . xxiv

* Unpublished cases
** Slip opinions

## INTRODUCTION

This lawsuit[1] names sixteen individual federal defendants and seeks money damages from their personal resources, alleging in seventeen separate counts that each violated Dr. Redd's constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). But, though packed with criticisms of the government as a whole, the complaint offers no more than "labels and conclusions" as to what each of the sixteen individually-named defendants did to purportedly violate clearly-established law. *Twombly v. Bell Atlantic Co.*, 550 U.S. 544, 555 (2007).[2] Moreover, the majority of the seventeen causes of action rely on "indisputably meritless legal theor[ies] such as … claim[s] that ... non-existent legal interest[s] ha[ve] been infringed." *Allen v. Briggs*, 331 Fed. Appx. 603, 604 (10th Cir. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1992)).[3] In short, for any number of reasons articulated in

---

[1] For clarity's sake, this motion will refer to "Plaintiff" in the singular. However, it is unclear from the complaint whose rights, exactly, this suit seeks to redress. It purports to seek damages "*for Dr. Redd*," Compl. ¶ 1 (emphasis added), and expressly disclaims an intent to sue "on behalf of … Jeanne H. Redd as an individual," *id.* ¶ 44. However, the caption refers to multiple plaintiffs, including Mrs. Redd. *See id.* p.1 ("The Estate of James D. Redd, M.D., by and through Jeanne H. Redd, the personal representative for and on behalf of, Plaintiffs Decedent James D. Redd, as an individual" and "The Estate of James D. Redd, M.D. by and through his personal representative Jeanne H. Redd and his heirs, and Plaintiffs Decedent James D. Redd."). It also alternates between referring to one plaintiff and multiple plaintiffs. *See id.* ¶¶ 2-3 (identifying two separate "plaintiffs," "Decedent Dr. James D. Redd," *id.* ¶ 2, and "The Estate of Dr. James Redd"); *id.* at p.3 ("Plaintiffs"); *id.* at p.4 ("violation of Plaintiff's Constitutional rights"); *id.* at p.24 ("Plaintiffs assert … the Defendant(s) violated Plaintiffs' rights"); *id.* at p.26 ("Defendant(s) violated Plaintiffs' rights … by violating Plaintiff James D. Redd's right"); *id.* ("Defendant(s) violated Plaintiffs' rights … by violating Plaintiffs' right"); *id.* at p.1 (describing opposing counsel as "Attorneys for Plaintiff").

[2] *See, e.g.,* Compl. ¶ 4 ("Each … conspired to participate[.]"); *id.* ("Each participated in one way or another[.]").

[3] *See see, e.g.,* Compl. p. 25 (citing a purported Fourth Amendment right to "freedom
(continued...)

this motion, this is precisely the type of case best disposed of on a threshold motion to dismiss.

## STATEMENT OF THE ISSUES

(1) Whether *Ashcroft v. Iqbal*, 129 S Ct. 1937 (2009), requires this Court to dismiss Plaintiff's *Bivens* claims on qualified immunity grounds, for failure to accuse each individual defendant of personal involvement in the alleged wrongdoing;

(2)  Whether Plaintiff's *Bivens* claims face dismissal on the additional ground that the complaint fails to plausibly allege the violation of clearly-established constitutional rights as necessary to defeat a qualified immunity defense;

(3) Whether *Heck v. Humphrey*, 512 U.S. 477, 485 (1994), requires dismissal of a *Bivens* suit brought by Mrs. Redd, nominally on behalf of her husband's estate, seeking relief that would necessarily imply the invalidity of her own criminal conviction and plea agreement;

(4) Whether the Tucker Act, 28 U.S.C. § 1491, which allows recovery against the United States for any unlawful taking of property by a federal employee, is a special factor counseling the Court against implying a *Bivens* remedy for any claim arising out of an alleged property taking; and

(5) Whether the claims against Defendant Kice, a New Mexico resident, and James McTighe, a Virginia resident, fail for lack of personal jurisdiction.

---

[3](...continued)

from deliberate falsehoods"); *Oliver v. State of Okla.*, 211 F.3d 1279 (10th Cir. 2000) (table) (no error in dismissing claim that was "legally frivolous because the Eighth Amendment does not apply to pretrial detainees"); Compl. pp. 28-29 (purporting to assert Eighth Amendment claims on behalf of pretrial arrestee).

# STATEMENT OF FACTS[4]

According to the complaint, Blanding, Utah is a "Mormon enclave" "of 3,000 residents located in the Four Corners region of the southwest."  Compl. ¶ 10.[5]  The Four Corners region has long been the site of "a tradition of groups … who went out and collected [Native American] artifacts."  *Id.* ¶ 14.  Though laws prohibited taking artifacts from "tribal or United States Government land," according to Plaintiff, "[h]istorically, everyone sort of looked sideways at the individuals who collected … artifacts[,] and the source[s] of the items were rarely questioned."  *Id.*  This practice reportedly gave rise to "a culture of many individuals who collected [Native American] artifacts with pride."  *Id.* ¶ 47(a).  Among them were Dr. James Redd, a Blanding physician and prominent member of the local Mormon community, and his wife, Jeanne.  *Id.* ¶ 47(e).  Dr. Redd was a father of five who also enjoyed hunting.  *Id.* ¶ 2.

In 2006, the Federal Bureau of Investigation and Bureau of Land Management initiated a joint multi-year investigation "into the looting of Native American artifacts on public lands."  Compl. ¶ 12.  "Operation Cerberus," as it was known, culminated in a total of  "24 arrests," *id.* ¶ 1, including those of the Redds.  On May 27, 2009, a federal

---

[4] As it must, this motion to dismiss relies on the facts alleged in the complaint.  *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1123 (10th Cir. 2005).  Labels and legal conclusions, however, are not properly pleaded "facts" and thus are not credited herein.  *See Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1165 (10th Cir. 2011) ("a naked legal conclusion, backed by no well-pleaded facts … [is] hardly enough to state a claim for relief"); *Moss v. Gillioz Const. Co.*, 206 F.2d 819, 820 (10th Cir. 1953) ("we take as true all of the factual allegations in the claim, leaving only the legal conclusions from facts well pleaded.").

[5] "The 'Four Corners Region' is the geographical area near the point where the states of Colorado, New Mexico, Arizona and Utah meet."  *Begay v. Public Service Co. of N.M.*, 710 F. Supp. 2d 1161, 1174 n.4 (D.N.M. 2010).  The area has "a history of  strife and conflict between American settlers and members of the Navajo Tribe" and other Native Americans.  *See Dine Citizens Against Ruining Our Environment v. Klein*, 747 F. Supp. 2d 1234, 1239 (D. Colo. 2010).

grand jury indicted the Redds on felony charges of trafficking in stolen artifacts, theft of government property, [and] theft of tribal property." Ex. 1 (indictment);[6] *see* Compl. ¶¶ 40-44. One count ("count four") in the indictment accused Dr. and Mrs. Redd jointly of "receiv[ing], conceal[ing], and retain[ing]" "an effigy bird pendant" "with a value of more than $1,000" "knowing [it] to have been embezzled, stolen or converted." Ex. 1, p. 2; Compl. ¶ 40. The complaint in this civil case contends that Dr. Redd had "picked up" this "bird effigy" while "walk[ing] with some of his family members." *Id.* ¶ 2.

Acting pursuant to warrants, federal agents arrested the Redds and searched their home on June 10, 2009. *Id.* ¶ 10. According to the complaint, unspecified agents arrived at the Redd home at approximately 6:40 a.m. *Id.* ¶ 30. Dr. Redd, who arrived soon after, was arrested as he exited his car by unnamed officers purportedly "armed with assault rifles, and wearing flak jackets with conspicuous law enforcement decals[.]" *Id.* ¶ 31, 47(d). An unspecified individual or individuals allegedly "manhandled" Dr. Redd (by "pull[ing] Dr. Redd out of his vehicle"), handcuffed him,"[7] and "interrogat[ed]" him for "four hours ...  in the garage." *Id.* ¶¶ 32, 47(d). During this questioning, agents, again

---

[6] The Court may take judicial notice of this and other matters related to the criminal proceedings against the Redds memorialized in the District of Utah's publicly-accessible PACER database. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *Matter of Search of Premises Known as 6455 South Yosemite*, 897 F.2d 1549, 1552 (10th Cir. 1990) (taking judicial notice that "a grand jury returned an indictment" on a particular date); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts "may exercise discretion to take judicial notice of publicly-filed records … concerning matters that bear directly upon the disposition of the case at hand.").

[7] The complaint also refers to "shackles" but does not make clear whether this is intended to be synonymous with "handcuffs" or otherwise explain the particulars of "restraint." *Id.* ¶ 55.

unidentified, purportedly "rebuked, terrified, and humiliated" Dr. Redd, *id.* ¶ 34, by "accus[ing] [him] of unlawful activity," *id.* ¶ 35; "call[ing] [him] a liar," *id.* ¶ 36; and "taunt[ing] [him] that a felony offense meant revocation of [Dr. Redd's] medical license," *id.* ¶ 36, and that "he would never practice medicine again."  *Id.* ¶ 37.  That day, both Redds appeared before a federal magistrate, who released them on their own recognizance.  *See* Ex. 2, pp. 4-5 (record of proceedings).  Sadly, Dr. Redd committed suicide the following day.  Compl. ¶ 57.

On July 6, 2009, Mrs. Redd pleaded guilty to all seven counts in the indictment. *See* Ex. 3 (guilty plea).  As part of her plea, she admitted that she had "possessed and displayed an effigy bird pendant" that she "knew … was taken without legal authority from the Navajo."  *Id.* at 4.  She also acknowledged that the "effigy bird pendant" was "valued in excess of $1000."  *Id.*  She further agreed to "forfeit to the BLM all interest in any equipment" or "property … that constitutes the proceeds of [her] offenses, ... including artifacts seized by the BLM on June 10, 2009" *id.* at 5[8]; "warrant[ed] that she [was] the sole owner" of the forfeited property," and "agree[d] to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by [her plea] agreement," *id.*  Following the entry of Mrs. Redd's guilty plea, a criminal court issued final judgment against her on all counts (including count four related to the bird effigy, "theft of tribal property").  *See* Ex. 4 (criminal judgment).  A criminal court also issued a final order of forfeiture

---

[8] At Mrs. Redd's sentencing hearing, the Court confirmed orally that the forfeiture order covered an Apple computer, "three Dell towers," a "GPS unit," and the over 800 "miscellaneous artifacts which are set forth in the bill of particulars."  Ex. 5, 10:13-20 (transcript of sentencing hearing); Ex. 7 (bill of particulars).

covering more than one hundred boxes of artifacts.  Ex. 6 (forfeiture order); Ex. 7 (bill of particulars).

Mrs. Redd now brings this *Bivens* suit, ostensibly "on behalf of … the Estate of James D. Redd," against sixteen current and former federal employees in their individual capacities.  *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); Compl. pp. 1, 4.[9]  She alleges generally that five BLM employees,[10] the current and former Utah State Directors of BLM,[11] and nine FBI agents[12] each "participated in one way or another in the planning and the execution of [a] plan … to … act like a multi-headed hound … from Greek and Roman mythology"  and thereby violated "what ever [*sic*] constitutional rights that may have existed in Greek or Roman mythology, and for sure in the Untied [*sic*] States of America in 2009." Compl. ¶ 5. Citing "the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments" and the Equal Protection Clauses of "the Constitutions of the United States and the State of Utah," Compl. p.2, the complaint argues that Defendants as a group "were out to get Dr. Redd" because of his religion and history of failed criminal prosecution, *id.* ¶ 47; that

---

[9] Dr. Redds' heirs have separately sued the United States for claims arising out of the same events, alleging "intentional infliction of emotional distress"; "wrongful death"; and "conversion, trespass to chattel & replevin."  *See* No. 2:11-cv-1162-SA (D. Utah.) (filed Dec. 14, 2011).  Defendants note that although Plaintiff can sue both the United States and individual federal employees, the "decision to sue the government … affects the availability of a *Bivens* action" because "a judgment against the United States under the FTCA constitutes 'a complete bar to any action by the claimant, by reason of the same subject matter, against the employee … whose act or omission gave rise to the claim.'"  *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir. 1994) (quoting 28 U.S.C. § 2676).

[10] Dan Barnes, Jon Edwards, Loren Good, Daniel Love, and Brent Range.

[11] Juan Palma and Selma Sierra, respectively.

[12] Seth Footlik, David Kice, Diane Kisabeth, Neil Rogers, Jennifer Vander Veer, Lynda Viti, Gibson Wilson, Timothy Fuhrman, and James McTighe.

they intentionally misrepresented the value of the bird effigy described in the indictment, *id.* ¶ 49[13]; that they "mentally harassed" Dr. Redd during questioning, *id.* ¶ 42; that they "used excessive and unreasonable force" against Dr. Redd, *id.* ¶ 50; and that they took "property without due process of law" after Dr. Redd's death, *id.* ¶ 61.  The complaint also accuses Defendant Love of making insensitive remarks about Dr. Redd after his death.  *Id.* ¶ 62.

---

[13]  Plaintiff also alleges that Dr. Redd "did not have" the effigy, Compl. ¶ 43, but it is unclear how to reconcile this portion of the complaint with an earlier passage stating that Dr. Redd had "picked up a … thick shell that appeared to be a bird effigy," which was used "to justify [Dr. Redd's] arrest."  *See* Compl. ¶ 2.  Because it is not "legitimately in doubt as to what the evidence will show" as to this point, it is inappropriate for Plaintiff to assert inconsistent facts of this nature.  *Harris v. Koenig*, 722 F. Supp. 2d 44, 54 (D.D.C. 2010); *see In re Livent, Inc. Noteholders Secs. Litigation*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) ("Internally conflicting factual assertions that constitute integral components of a claim must be distinguished from a permissible alternative statement embodying a theory of a whole sufficient claim."); *Bailey's Bakery, Ltd. v. Continental Baking Co.*, 235 F. Supp. 705, 717 (D.C. Hawaii), *aff'd*, 401 F.2d 182 (9th Cir. 1968) ("While contradictory *theories* of recovery may be alleged under the rules, the court may nevertheless take cognizance of contradictory *facts* set forth in the pleading …"), *overruled in part on other grounds*, *Kirihara v. Bendix Corp.*, 206 F. Supp. 72 (D. Hawaii 1969); 2-8 Moore's Federal Practice – Civil § 8.04[4] ("Courts have read the policy underlying Rule 8, together with Rule 11, to permit claimants to aver facts that they believe to be true, but that lack evidentiary support at the time of pleading. Generally, however, such averments are allowed *only when the facts that would support the allegations are solely within the defendant's knowledge or control*.") (emphasis added).

## SUMMARY OF ARGUMENT

In the constitutional tort context, the Supreme Court has made abundantly clear that any complaint failing to specifically allege that "each Government-official defendant, through *his own individual actions*, … violated this Constitution," *must* be dismissed prior to discovery.  *Iqbal*, 129 S. Ct. at 1948 (emphasis added).[14]  As the Tenth Circuit has stated, this standard requires that plaintiffs "make clear exactly *who* is alleged to have done *what* to *whom* … as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (noting "the special interest in resolving the affirmative defense of qualified immunity" as early as possible); *see Bridges v. Lane*, 351 Fed. Appx. 284, *2 (10th Cir. 2009) (unpublished) ("We are especially critical of complaints that do not articulate specific … persons involved in the alleged misconduct[.]").  Plaintiff's utter failure to allege specific facts plausibly suggesting that each individual defendant personally violated any clearly-established constitutional right, *see infra* Section I(A), is so obvious and pervasive that the Court could dispose of this entire lawsuit quickly and easily on the basis of qualified immunity alone.  *See Sinochem Intern. Co. v. Malaysia Intern. Shipping*, 549 U.S. 422, 431 (2007) ("a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'") (internal citations omitted).[15]

---

[14] *Accord Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[15] *See also Sinochem*, 549 U.S. at 432 (authorizing courts to "dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant"); c*f. Pearson v. Callahan*, 555 U.S. 223, 239 (2009) (when "a court [can] rather quickly and easily decide that there was no violation of clearly established law," it may

(continued...)

The claims also fail for a number of additional reasons, ranging from the straightforward (*e.g.,* personal jurisdiction as to two defendants), to the somewhat less ordinary (*e.g.,* special factors precluding a *Bivens* remedy for a takings claim).  However, because of the overwhelming strength and dispositive nature of the individual defendants' qualified immunity defense in this case, this Memorandum will address qualified immunity first, before moving on to consider the technically threshold issues of availability of remedies and personal jurisdiction.  Section I explains that qualified immunity bars each of Plaintiff's claims.  Section II illustrates how the Supreme Court's decision in *Heck v. Humphrey* requires dismissal of Plaintiff's property/takings claim as well as any claim based on the search of the Redd home.  Section III argues that the Tucker Act is a special factor precluding a *Bivens* remedy for the takings claim.  The Memorandum concludes by demonstrating in Section IV that the Court lacks personal jurisdiction over Defendants Kice and McTighe.

## ARGUMENT

**I.      Qualified immunity defeats all of Plaintiff's constitutional claims.**

Qualified immunity shields federal officials from both civil liability and the burdens of litigation itself, including participation in discovery, unless a plaintiff has plausibly alleged the violation of a clearly-established constitutional right.  *See Iqbal*, 129 S. Ct. at 1948; *Workman v. Jordan*, 958 F.2d 332, 335 (10th Cir. 1992); *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).[16]  When considering whether Plaintiff has

---

[15](...continued)
elect not to "turn[] to the more difficult question whether the relevant facts make out a constitutional question at all.").

[16] Because qualified immunity "is effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth*, 472  U.S. 511, 526 (1985), courts should resolve immunity

(continued...)

stated plausible claims for constitutional violations, the Court must "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff," *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but ignore "conclusory allegations, unwarranted inferences, [and] legal conclusions." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).[17]

"Analysis of qualified immunity involves two steps," (1) asking "whether the alleged facts … show a constitutional violation," and (2) determining "whether the right was clearly established." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Courts have discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 n.2 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Each of Plaintiff's seventeen causes of action for alleged constitutional violations fails on both prongs.

### A. Plaintiff has not alleged facts to support that each individual defendant was personally involved in the alleged constitutional violations.

The proposition that constitutional tort liability can arise *only* out of "personal involvement in the alleged constitutional violation" is blackletter law. *Gallagher v.*

---

[16](...continued)
questions at the earliest possible stage of litigation, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *accord VanZandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843, 847 (10th Cir. 2008) (unpublished) (noting the "special interest in resolving the affirmative defense of qualified immunity at the earliest stage of a litigation") (citations and quotations omitted).

[17] The complaint abounds with such conclusions. *See, e.g.,* Compl. ¶ 42 ("The representation … was a deliberate, reckless misrepresentation of value provided under oath by the Defendants."); *id.* ¶ 55 ("The manner of execution resulted in the unconstitutional use of excessive force[.]").

*Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *accord Foote v. Spiegel*, 118 F.3d 1416,

1423 (10th Cir. 1997).  Unlike suits under 42 U.S.C. § 1983 against state actors, there is

no such thing as entity liability for *Bivens* claims.  *See FDIC v. Meyer*, 510 U.S. 471

(1994).  Rather, in the federal arena, only individuals are proper *Bivens* defendants, and

to state a claim against them, "the factual allegations should 'make clear exactly *who* is

alleged to have done *what* to *whom* … as distinguished from collective allegations

against the state." *Robbins*, 519 F.3d at 1250; *see Bridges v. Lane*, 351 Fed. Appx. 284,

*2 (10th Cir. 2009) (unpublished) ("We are especially critical of complaints that do not

articulate specific … persons involved in the alleged misconduct[.]") (citation and

quotation omitted).  Failure "to isolate the allegedly unconstitutional acts of each

defendant" will prove fatal.  *Robbins*, 519 F.3d at 1250.  A complaint that fails to

sufficiently allege personal involvement necessarily fails the first prong of the qualified

immunity test.  *See Larsen v. State Employees' Retirement System*, 553 F. Supp. 2d 403,

422 n.15 (M.D. Pa. 2008) (plaintiff "has failed to allege sufficient personal involvement

… and therefore [his] equal protection claim fails the first prong of the qualified

immunity analysis").

The complaint filed in this suit does not allege *any* specific conduct – wrongful or

otherwise – on the part of fourteen of the individual federal defendants, who are accused

of nothing more than participating in one way or another with all of the other defendants

in planning and implementing Operating Cerberus.  Indeed, their names appear nowhere

but in the caption and a paragraph identifying the individual defendants.  This alone

mandates dismissal of all claims against (1) Dan Barnes, (2) Brent Range, (3) Loren

Good, (4) Jon Edwards, (5) Jennifer Vander veer, (6) David Kice, (7) Selma Sierra, (8)

Juan Palma, (9) Lynda Viti,[18] (10) Neil Rogers, (11) Diane Kisabeth, (12) Timothy Fuhrman, (13) James McTighe, and (14) Seth Footlik.  *See Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (claim properly dismissed where plaintiff "failed to allege the personal participation of any of the other defendants"); *Jensen v. Wagner*, 603 F.3d 1182, 1200 n.4 (10th Cir. 2010) (no viable claim when plaintiffs "cursorily allege[d] that all defendants … violated their due process rights" but "ma[d]e no specific factual allegations against" any particular defendant).[19]

Indeed, personal involvement in the actions underlying the complaint would have been *impossible* for a number of these defendants, who were not even federal employees in or near Utah at the time of the alleged wrongdoing.  *See*, *e.g.*, Ex. 8 (BLM declaration establishing that Defendant Palma took office in July 2010); Ex. 9 (FBI declaration

---

[18] Plaintiff's characterization of Defendant Viti as the "team leader," Compl. ¶ 5, cannot suffice.  *See Iqbal*, 129 S. Ct. at 1949 ("each Government official, *his or her title notwithstanding*, is only liable for his or her own misconduct") (emphasis added); *Williams v. Berney*, 519 F.3d 1216, 1225 (10th Cir. 2008) ("official position alone is not enough to create a substantive due process claim"); *Smith v. Millet*, No. 07-723, 2009 WL 3181996, *8 (D. Utah Sept. 28, 2009) (slip) ("despite identifying [defendant] as the Task Force Commander, Plaintiff has not alleged any facts showing that [defendant] personally directed or controlled either of the investigations in this case or directly caused any injury by failing to supervise his officers" and so stated no "plausible claim for relief").

[19] The blanket and conclusory "conspiracy" allegations cannot make up for this failure.  *See Smith v. Freestone*, 1999 WL 510524, 188 F.3d 519, *1 (10th Cir. 1999) (table, unpublished) ("conclusory statements supporting [an] allegation of conspiracy" were "not a claim for which relief could be granted"); *Lynn v. Kunen*, 1998 WL 1173, 162 F.3d 1173, *1 (10th Cir. Oct. 19, 1998) (table, unpublished) (affirming "reject[ion] [of] plaintiff's claim of conspiracy on the basis that he offered nothing more than vague, conclusory allegations and failed to allege specific facts showing agreement and concerted action between the defendants"); *Jensen v. Wagner*, 603 F.3d 1182, 1200 n.4 (10th Cir. 2010) (where plaintiffs "cursorily allege[d] that all defendants made misrepresentations that violated their due process rights" but "ma[d]e no specific factual allegations against" a particular defendant, plaintiffs asserted no procedural due process claim against him).

establishing that Defendant Wilson was transferred to New Delhi in December 2008 and that Defendant McTighe did not became the Special-Agent-in-Charge of the FBI's Salt Lake City office until December 2009). The court may properly take judicial notice of these defendants' dates of service. *Brown v. District of Columbia*, 514 F.3d 1279, 1285 (D.C. Cir. 2008) ("We take judicial notice of the fact that [defendant] did not begin his first term of office as mayor until 1999 and … received his appointment as Director of the D.C. Department of Corrections that same year, … and accordingly affirm dismissal of the claims[.]").[20] In any event, the failure to allege facts as to *any* of the fourteen noted defendants – regardless of whether or not they were in office at the time – is fatal to Plaintiff's claims.

The complaint identifies only two defendants as having done *anything* in particular, and what they are alleged to have done does not state a constitutional claim. Defendant Wilson is accused of nothing more than the facially lawful acts of allegedly "discover[ing]" "artifacts … in Defendant Love's vehicle" and "writ[ing] up" Defendant Love as a result. *See* Compl. ¶ 63; *see Twombly*, 550 U.S. at 545 (at the pleadings stage, plaintiffs must proffer "allegations plausibly suggesting (not merely consistent with)" wrongdoing). Defendant Love alone even arguably faces specific allegations of inappropriate conduct, but none of the specific acts he is accused of taking bears any relationship to any of the legal claims brought on behalf of Dr. Redd's estate. It is

---

[20] *See also White-Ruiz v. City of New York*, 983 F. Supp. 365, 390 (S.D.N.Y. 1997) ("I could take judicial notice of Commissioner Kelly's date of appointment … and that date alone strongly suggests the lack of any meaningful connection between [him] and the policies he subsequently disavowed[.]"); *Corbin v. Cannon*, 838 F. Supp. 561, 563 (M.D. Fla. 1993) (taking judicial notice of dates defendant served as Sheriff and granting motion to dismiss); *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 179 F. Supp. 944, 953 (D.C. Pa. 1959) (taking judicial notice "that the term of office of the defendant as District Attorney expires at the end of the calendar year").

unclear what amendments the alleged conduct even implicates or how any alleged

constitutional violation could have injured Dr. Redd posthumously.  *See* Compl. ¶ 62

(accusing Defendant Love of making insensitive remarks about the Redds following Dr.

Redd's suicide); *id.* ¶ 63 (suggesting Defendant Love improperly kept evidence in his

car); *Holgers v. South Salt Lake City*, No. 10-532, 2011 WL 98488, *3 (D. Utah Jan. 12,

2011) (slip) (dismissing complaint that neglected to explain "how the facts from the

Factual Allegations Section of the Complaint fit with the legal standards and duties laid

out in the individual causes of action").  Obviously, events that took place after Dr.

Redd's allegedly wrongful death could not be said to have caused it.[21]  Put simply, the

complaint fails to "nudge" any claim against any defendant "across the line from

conceivable to plausible" and must be dismissed in its entirety on that basis alone.

*Dennis v. Watco Companies, Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting

*Twombly*, 550 U.S. 544, 570); *see Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir.

2008) (plaintiff "may have many valid claims against many people," but "conclusory

---

[21] To the extent that the complaint intends to bring claims based on the suffering of Dr.
Redd's family members post-dating his death, those claims would fail for lack of
standing and because the Tenth Circuit does not recognize *Bivens* claims for damages
suffered by a decedent's relative after an allegedly wrongful death.  *See Berry v. City of
Muskogee, Okl.*, 900 F.2d 1489, 1506-07 (10th Cir. 1990); *Teufel v. United States*, 5 F.3d
547, *2 (10th Cir. Aug. 26, 1993) (unpublished); *Coleman v. Craig*, No. 88-1401, 1991
WL 42291, *3 (D. Kan. Mar. 11, 1991) (unpublished), *aff'd*, 951 F.2d 1258 (10th Cir.
1991) (table); *Winton v. Board of Com'rs of Tulsa Cty., Okl.*, 88 F. Supp. 2d 1247, 1256
(N.D. Okla. 2000); *Becerra ex re. Perez v. Unified Government of Wyandotte Cty.*, 342 F.
Supp. 2d 974, (D. Kan. 2004), *rev'd on other grounds*, 432 F.3d 1163 (10th Cir. 2005);
*Reindl v. City of Leavenworth, Kansas*, 443 F. Supp.2d 1222, 1235 (D. Kan. 2006);
*Naumoff v. Old*, 167 F. Supp.2d 1250, 1252-53 (D. Kan. 2001); *Estate of Fuentes ex rel.
Fuentes v. Thomas*, 107 F. Supp. 2d 1288 , 1295 (D. Kan. 2000); *Cobello v. Pelle ex rel.
Boulder Cty. Bod. of  Com'rs*, No.06-02600, 2008 WL 926522, *3 (D. Colo. Mar. 31,
2008) (unpublished); *Sager v. City of Woodland Park.*, 543 F. Supp. 282 (D.C. Colo.
1982).

allegations that simply name the 'Defendants' generically" must be dismissed).

> **B. Qualified immunity precludes Plaintiff's Fourth (Counts 1-9), Fifth (Counts 10-13), Sixth (Count 14), Eighth (Counts 15 and 16), and Fourteenth (Count 17) Amendment claims.**

Even if the Court could overlook Plaintiff's failure to sufficiently allege personal involvement on the part of each defendant, none of the various causes of action properly asserts a *Bivens* claim.

> **1. Qualified immunity bars Plaintiff's Fourth Amendment claims (Counts 1-9).**

The complaint purports to assert nine separate causes of action under the Fourth Amendment. *See* Compl. pp. 25-26. Those for alleged violations of "due process," "equal protection," and "freedom from deliberate falsehoods" cannot satisfy prong one of the qualified immunity test for the simple reason that the Fourth Amendment contains no such guarantees. *See* Compl. pp. 24-25 (First Cause of Action); *id.* at p.25 (Fifth Cause of Action); *id.* at p.26 (Eighth Cause of Action). To the extent that the complaint attempts to state claims based on what the Fourth Amendment *does* protect – "[t]he right of the people … against unreasonable searches and seizures" – those fail as well, as to both prongs.[22] *See Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) ("to avoid judgment … based on qualified immunity, 'the plaintiff must show that the defendant's actions

---

[22] *See* Compl. p. 25 (Second Cause of Action for "unreasonable search of [Dr. Redd's] residence"); *id.* (Third Cause of Action for "unreasonable seizure"); *id.* (Fourth Cause of Action for "unreasonable search of [Dr. Redd's] person"); *id.* (Fifth Cause of Action for "unreasonable search and seizure"); *id.* at pp. 25-26 (Sixth Cause of Action for "unreasonable search and seizure by the use of excessive and unreasonable force"); *id.* at p. 26 (Seventh Cause of Action for "unreasonable treatment"); *id.* (Eighth Cause of Action for "unreasonable treatment); *id.* (Ninth Cause of Action for "unreasonable search and seizure").

violated a … constitutional right, and that the … right[] … [was] clearly established at the time of the conduct at issue'").

### a. Defendants are entitled to qualified immunity with respect to the challenged search and seizure.

As the complaint acknowledges, agents arrested Dr. Redd and searched the Redd home pursuant to warrants issued after a grand jury determined that probable cause existed to believe that Dr. Redd and his wife had committed multiple felonies.  Compl. ¶¶ 40, 42;  *see Thomas v. City of Snyder*, 1996 WL 662453, 103 F.3d 145, *3 (10th Cir. 1996) (table, unpublished) (describing "an indictment" as "a subsequent assessment of probable cause"); *United States v. Musson*, 802 F.2d 384, 386 (10th Cir. 1986) ("[T]he probable cause determination by a grand jury has obviously been long recognized by the courts as sufficient at least for an immediate arrest on the charge in the indictment.").  As a result, Plaintiff fails to allege a constitutional violation at all.  However, "[i]n the qualified immunity context, all that is required is *arguable* probable cause[.]"  *Howards v. McLaughlin*, 634 F.3d 1131, 1151 (10th Cir. 2011) (emphasis added); *see Cortez v. McCauley*, 478 F.3d 1108, 1120 & n.15 (10th Cir. 2007) (en banc) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").  Even if the warrants and indictment did not establish probable cause, they certainly established arguable probable cause for qualified immunity purposes, ensuring that the claims could not pass prong two.  Thus, no legitimate basis exists to challenge Dr. Redd's arrest itself or the search of the Redd home.

Insofar as Plaintiff suggests that purported flaws in the indictment rendered the arrest or search unconstitutional, *see* Compl. ¶ 42 (alleging "representation of [a] false value in the indictment"), *id.* ¶ 43 ("the indictment referenced an 'effigy bird pendant'

that Dr. Redd, did not have"), the Court should reject that contention as conclusory.  *See*

*Twombly*, 550 U.S. at 555.  It is also implausible, especially in light of Plaintiff's

admission in the complaint that Dr. Redd "picked up" the bird effigy he was indicted for

misappropriating Mrs. Redd's plea agreement, in which she admitted criminal

wrongdoing for possession of the effigy.[23]  *See* Ex. 3 (guilty plea).  And, even assuming

the indictment did contain such flaws, they would not have been immediately apparent to

officers executing the warrants such that relying on that indictment would be sufficient to

sacrifice qualified immunity.[24]

Lastly, the doctrine of judicial estoppel precludes Mrs. Redd from arguing in this

civil suit that "there was no evidence that the [effigy] was worth in excess of $1,000" and

that the date on the indictment was somehow "impossible."  Compl. ¶ 48(a).  *See*

*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) ("Where a party

assumes a certain position in a legal proceeding, and succeeds in maintaining that

position, he may not thereafter … assume a contrary position.") (quoting *Davis v.*

---

[23] The allegations that some unspecified person or persons deliberately misrepresented the value of the artifact described in the indictment and the date of the crime, ¶¶ 48(a), 49, and knowingly accused Dr. Redd of a crime he had not committed, ¶ 48(d), rest entirely on the type of conclusory statements properly disregarded on a threshold motion.  *See, e.g.,* Compl. ¶ 47(h) ("[t]he Defendants knew that they really did not have a felony case against Dr. Redd"); *id.* ¶ 48(a) (alleging that "the date of the crime" was "known to the Defendants" to be "impossible" for unspecified reasons); *id.* ¶ 49 ("Defendants gave deliberate falsehoods or had a reckless disregard for the truth in making any statements of value for the artifact[.]").  In any event, they are not attributed to any named defendant.

[24] *See Smith v. Millett*, 2009 WL 3181996, at *7 (D. Utah Sept. 28, 2009) ("Although Plaintiff alleges that the warrant was invalid it is well-settled that a police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages.") (internal quotation and citation omitted); *Howards v. McLaughlin*, 634 F.3d 1131, 1151 (10th Cir. 2011) ("In the qualified immunity context, all that is required is arguable probable cause[.]").

*Wakelee*, 156 U.S. 680, 689 (1895)).  That contention directly contradicts her guilty plea, wherein she "stipulate[d] and agree[d] that" "[o]n March 27, 2008, [she] possessed and displayed an effigy bird pendant … in [her] home in Blanding, Utah" and "acknowledge[ed] that the pendant [was] valued in excess of $1000."  Ex. 3, p.4.  *See New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (courts should consider whether "the party seeking to assert an inconsistent position would derive an unfair advantage"); *Bradford v. Wiggins*, 516 F.3d 1189, 1194-95 & n.3 (10th Cir. 2008) (plaintiffs who admitted via pleas that they refused officers' instructions could not sue the officers for false arrest); *Johnson*, 405 F.3d at 1069 (plaintiffs who had previously entered pleas in abeyance in which they admit attempting to injure officers cannot later sue those officers for excessive force); *Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996) (rejecting plaintiff's attempt, "after receiving the benefit of the plea bargain" for "maliciously attacking" a police officer, to "have it the other way" in a constitutional tort suit alleging "that he did not maliciously attack" the officer).

### b. Defendants are entitled to qualified immunity as to the manner in which the arrest and search were conducted.

In addition to challenging the fact of the arrest and seizure, the complaint criticizes several aspects of the manner in which Dr. Redd's arrest and the search of his home were carried out.  Without identifying or even estimating how many agents were at the Redds' home specifically (or participated in the search, Dr. Redd's arrest, or Mrs. Redd's arrest), the complaint suggests that the number was "excessive."[25]  It also decries

---

[25] It is unclear whether the drafter concluded that there were 80 agents in the town of Blanding, or throughout "the Four Corners region of the Southwest United States."  *See* Compl. ¶ 1 ("approximately eighty (80) federal agents … carried out 'Operation CERBERUS Action' 'raiding,' … Blanding, Utah … Of the 24 arrests made that day, 16 were in Blanding"); *id.* ¶ 30 ("80 federal agents, including but not limited to the named

(continued...)

the fact that officers were purportedly "armed with assault rifles, and wearing flak jackets with conspicuous law enforcement decals." Compl. ¶ 47(d).[26]  Finally, the complaint alleges with little detail "excessive" use of force, stating that Dr. Redd was "restrained" at some point, *id.*¶ 31[27]; was "pulled … out of his vehicle," *id.*¶ 47(d); and was "isolated … in his garage" for a lengthy "interrogation" that he found "mentally traumatic," *id.*

Allegations of "unreasonable seizure or excessive force … are assessed under the 'objective reasonableness' standard of the Fourth Amendment."  *Thomson v. Salt Lake County*, No. 05-352, 2006 WL 3254471, *3 (D. Utah) (unpublished), *aff'd*, 584 F.3d 1304 (10th Cir. 2009).  "The precise question" on which qualified immunity turns is "whether the officer[s'] actions [were] objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Thomson*, 584 F.3d at 1313 (quoting *Graham*, 490 U.S. at 397); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (refusing to consider officers' actual subjective motivations in evaluating Fourth Amendment reasonableness).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

---

[25](...continued)
Defendants … raided and searched … targets in Blanding, Utah, including Dr. Redd's home.").  Adopting the inferences most favorable to the party filing the complaint, this motion will assume that there were 80 agents in the town of Blanding and that they together carried out 16 arrests in an unspecified sequence and unspecified locations over the course of 24 hours.

[26]  *See also* Compl. ¶ 30 ("federal agents … [were] armed with a ridiculous and disproportionate number of assault rifles, while clothed in flak-jackets").

[27]  The exact manner of the allegedly improper restraint is unclear.  The complaint refers to "the use of handcuffs" and " the use of shackles."  Compl. ¶ 55.

"[P]olice officers should not be required to take unnecessary risks in performing their duties." *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). In keeping with this, "[t]he right to arrest an individual carries with it the right to use some physical coercion to effect the arrest … and … it is not unreasonable for officers to carry weapons or to take control of a situation by displaying their weapons." *Holland v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001) (internal citations omitted).[28] For example, the Tenth Circuit has held that "where several persons were inside [a] residence and firearms were present," "the decision to employ [a] SWAT team" was not unreasonable. *Ealum v. Schirard*, 46 Fed. Appx. 587, 595 (10th Cir. 2002) (unpublished) (citing *Holland*, 268 F.3d at 1191).[29] This was true even in a case involving "an arrest on a *misdemeanor* warrant and to conduct a search of a residence." *Phillips v. James*, 422 F.3d 1075, 1082 (10th Cir. 2005) (emphasis added).

In this case, agents were present to make two felony arrests. As pleaded, Dr. Redd blamed them for past "distress and anxiety," *id.* ¶ 47(c); was a high-profile member of a group historically in tension with "federal powers," *id.* ¶ 47(e); had "a wife and five children," *id.* ¶ 57; and "loved … hunting," *id.* ¶ 2. Against this backdrop, a large number of armed officers would not be unreasonable. *See Reeves v. Churchich*, 484 F.3d 1244, 1260 (10th Cir. 2007) ( "not unreasonable for officers to carry weapons when entering the premises of a suspected felon with a reputation for possessing firearms"). And, as

---

[28] *See also Stuart v. Jackson*, 24 Fed. Appx. 943, 954 (10th Cir. 2001) (unpublished) ("law enforcement's right to make an arrest … necessarily carries with it the right to use or threaten some degree of physical force") (citing *Graham*, 490 U.S. at 396).
[29] *See also Whitewater v. Goss*, 192 Fed. Appx. 794, 798 (10th Cir. 2006) (unpublished) ("the mere decision to deploy a SWAT team, even under a blanket rule, does not offend the Fourth Amendment," unless a defendant "knew the team would use excessive force, intended to cause harm, or instructed the team to use excessive force").

explained above, the complaint's failure to accuse any named defendant of making any decisions regarding the number of agents present or to what extent those agents ought to be armed defeats any *Bivens* claim against them.[30]  In other words, Plaintiff fails at prong one because the complaint alleges no constitutional violation at all.

Plaintiff's claims also fail at step two.  "[N]othing in the fourth amendment specifies how many officers may respond to a call."  *McNair v. Coffey*, 279 F.3d 463, 466 (7th Cir. 2002).  Nor does any sufficiently analogous caselaw set forth exactly how many officers ought to have been present at the Redd home, how many should have participated in the various events that took place there, or what they should have been wearing.[31]  In any event, the complaint's failure to even estimate how many officers were present makes it impossible to conclude that the number was so clearly too high in light of clearly-established law as to overcome qualified immunity.

### c.  Qualified immunity bars any excessive force claim.

The claim that Dr. Redd was "restrained" for an unspecified period of time plainly fails to state a constitutional violation, thus defeating Plaintiff's excessive force

---

[30] *See Schiff v. Kerrigan*, 625 F. Supp. 704, 711 n.16 (D. Conn. 1986) ("Plaintiff has argued that the search was … conducted in an unreasonable manner because of the number of officers conducting the search and the length of time of the search" but "has offered no evidence that either of these defendants had any part in determining the number of officers who would participate in the search.").

[31] *See Ruttenburg v. Jones*, 2008 WL 2436157, 283 Fed. Appx. 121, 136 (4th Cir. 2008) (unpublished) ("it may be eminently reasonable for fifty (or more) police officers to participate in the search of a liquor establishment."); *Crosby v. Paulk*, 187 F.3d 1339, 1350 (11th Cir. 1999) (rejecting "a separate claim for excessive force based on the *number* of law enforcement officers used to conduct the searches at the [plaintiffs'] nightclubs"; *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds*, *Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007)  (affirming summary judgment for twenty officers, including a SWAT team, who executed four arrest warrants at a private residence in a quiet, seaside town).

claim at step one of the qualified immunity inquiry.  "[A] detention 'does not become

unreasonable just because police officers use handcuffs on a subject[.]'"  *United States v.*

*Valenzuela*, 231 Fed. Appx. 785, 789 (10th Cir.) (unpublished), *cert. denied*, 552 U.S.

910 (2007) (quoting *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002)).  The

Tenth Circuit has rejected an excessive force claim based on handcuffing nonresisting

plaintiffs "arrested for [a not] especially severe crime"  *Silvan v. Briggs*, 309 Fed. Appx.

216, 224 (10th Cir. 2009) (unpublished).  That claim was denied even though the "force"

allegedly caused the arrestees to experience "dehydration," "'chaffing and soreness of

wrists,'" and "'extreme emotional trauma' as a result of being publicly displayed in

handcuffs."  *Id.*  Here, the nature and length of the alleged "restraint" is vague at best,

and the complaint omits any reference to any immediate injury or even passing

discomfort sustained as a result of the alleged use of force.  *See Fisher v. City of Las*

*Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) ("Because handcuffing itself is not

necessarily an excessive use of force in connection with an arrest, a plaintiff must show

actual injury in order to prove that the officer used excessive force in the course of

applying handcuffs.").[32]

The complaint is likewise vague as to what additional "excessive force" was

employed against Dr. Redd, explaining only that it happened over a brief period of time –

as Dr. Redd "exited his car," Compl. ¶ 31; consisted of "manhandl[ing]," *id.* ¶ 32; may or

---

[32] *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-10 (10th Cir.), *cert. denied*, 129 S. Ct. 1003 (2009) (denying qualified immunity on excessive force handcuffing claim because plaintiff told the officers several times that the handcuffs were too tight, and medical evidence documented injury to his wrists); *Stepka v. Jonsgaard*, No. 10-00320, 2011 WL 2883375, *8 n.2 (D. Colo. Jul. 18, 2011) (slip) ("The circuit has … required a plaintiff to establish some 'non-*de minimus* actual injury'" in handcuffing cases.).

may not have been limited to "pull[ing] Dr. Redd out of his vehicle," *id.* ¶ 47(d); and caused no documented or lasting injury.  This, too, fails to set forth sufficient *facts* to plausibly suggest a constitutional violation at all.  *See Marin v. City of Albuquerque*, 375 F. Supp. 2d 1128, 1133-34 (D.N.M. 2004) ("reasonable in the context of the lawful arrest and of [plaintiff's] refusal to … exit the vehicle" for defendant officer to pull him out of his vehicle, causing only "minor superficial injuries").[33]  Nor can the "excessive force" claim satisfy prong two.  No caselaw – now or in 2009 – clearly established that the vague allegations with respect to a "manhandling" violated the Fourth Amendment, and far more intrusive conduct has been found protected by qualified immunity at prong two. *See Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1189-90 (10th Cir. 2001) (even though "the fourth amendment protection against excessive force" prohibits "a hog-tie restraint in situations such as [this] one," court could not "say that at the time of this tragic incident the decedent had a clearly established right").  Certainly no "consensus of cases of persuasive authority" compelled the conclusion that the ill-described conduct in this complaint violated clearly-established law.  *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603 (1999)).

---

[33] *See also Hill v. Walk*, No. 2:09-cv-218, 2011 WL1233198, at *9 (D. Utah Mar. 31, 2011) (slip) (where plaintiff "fail[ed] to show that he suffered any significant physical injury, or that Defendants were personally involved or had the requisite state of mind" evidence could not "support a finding that Defendants violated Plaintiff's rights under the Eighth Amendment"); *Lawrence v. Kenosha County*, 391 F.3d 837, 843 (7th Cir. 2004) (rejecting excessive force claim against officer who "grabbed [plaintiff's] left arm and attempted to pull him out of his vehicle" and noting that plaintiff's "doctor was unable to confirm that [plaintiff's] shoulder pain was caused by anything that might have occurred in the altercation"); *Bowman v. Dozier*, 73 Fed. Appx. 219, 220 (9th Cir. 2003) (unpublished) ("In effectuating the lawful arrest, [defendant's] attempt to pull [plaintiff] to her feet … was not unreasonable.").

The allegations pertaining to an unpleasant interrogation prove equally unavailing.  As to the alleged "mental harassment," Compl. ¶ 42, the specific facts pleaded – accusing an indicted defendant of violating the law and confronting him with the consequences of such a violation – fall short of "unreasonable" for the purposes of Fourth Amendment analysis, and certainly did not violate clearly-established law as of 2009.  *See Holland v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2004) ("unlikely that harsh language alone would render a search or seizure 'unreasonable'"); *Reeves v. Churchich*, 331 F. Supp. 2d 1347, 1352 (D. Utah 2004) ("The … allegation … that she called [plaintiff] a 'bitch' and told her to get back in her apartment … is not enough to find [defendant officer] liable for violating plaintiffs' Fourth Amendment rights.").[34]  Nor does the complaint allege or even suggest that Dr. Redd voiced any objection to answering any questions.  Thus, Plaintiff fails to state a constitutional violation at all, much less a clearly-established one.  No reasonable officer would have been on notice that the actual conduct alleged in the complaint violated the Fourth Amendment.  *See Cortez*, 478 F.3d at 1144 n.11 ("what a court must do is identify case law that applies … such that a reasonable officer would be on notice that his or her conduct was unlawful").

---

[34] *See also Pena-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st Cir. 2004) (rejecting claim for "a constitutional violation based on harsh language and handcuffing" where plaintiff had alleged that "since no force was necessary to effectuate his arrest, any force was therefore unreasonable and excessive"); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) ("[Y]elling, cursing, or even race-baiting does not violate any constitutionally protected rights."); *Wims v. New York City Police Dept.*, No. 10-6128, 2011 WL 2946369, *5 (S.D.N.Y. Jul. 20, 2011) (slip) ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim. … Similarly, the verbal abuse, on its own, is not actionable."); *Lucas v. City of Boston*, No.07-10979, 2009 WL 1844288, *22 (D. Mass. June 19, 2009) (slip) ("the officers' harsh language and threatening use of their weapons, without more, would not be a sufficiently obvious violation of Mrs. Lucas's Fourth Amendment rights to overcome the officers' qualified immunity defense").

Finally, to the extent that Plaintiff intends to suggest that violations of "law enforcement standards and policy" can give rise to *Bivens* liability, *see* Compl. ¶¶ 58, 59, such an argument must be rejected outright.  *See Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").  An official's "violation of his own internal procedures does not make [conduct] a violation of a clearly established constitutional right."  *Herring v. Keenan*, 218 F.3d 1171, 1180 (10th Cir. 2000); *see Tanberg v. Sholtis*, 401 F.3d 1151, 1160 (10th Cir. 2005).  In other words, even if an officer violated standard operating procedures – and it is not at all clear that any conduct alleged here did – "this violation would not create a violation of a clearly established constitutional right[.]"  *Tanberg*, 401 F.3d at 1160.[35]  For all of these reasons, Plaintiff cannot show the violation of any clearly-established Fourth Amendment rights.

### 2.   Qualified immunity defeats Plaintiff's Fifth and Sixth Amendment claims (Counts 10-14).

Though not models of clarity,[36] the Tenth, Eleventh, and Twelfth Causes of Action seem intended to assert Fifth Amendment substantive due process, equal

---

[35] *See also Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation"); *Dexter v. Ford Motor Co.*, 92 Fed. Appx. 637, 641 n.4 (10th Cir. 2004) (unpublished) (noting plaintiff's concession "that violation of an express prison policy requiring seatbelting of inmates cannot provide the basis for establishing an Eighth Amendment violation"); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 647 (10th Cir. 1988) ("Plaintiffs' attempts … to base their privacy claim on defendants' alleged failure to follow internal HHS administrative procedures … are unavailing.").

[36] *See, e.g.*,  Compl. p.27 (alleging, in the Tenth Cause of Action, that "Defendant(s) violated Plaintiffs' rights … by not violating the Plaintiff James D. Redd's right against discrimination and class so unjustified as to be in violation of due process … and equal protection.").

protection, and unlawful takings claims.[37]  The Thirteenth and Fourteenth Causes of

Action purport to state Fifth and Sixth Amendment claims based on alleged violations of

Dr. Redd's right against self-incrimination and right to counsel.  *See* Compl. pp. 27-28.

These all fail as a matter of law because they can satisfy neither qualified immunity

prong.

> **a.  The Fifth Amendment equal protection claims fail (Counts
>       10, 11, and 14).**

To state a viable equal protection claim, a plaintiff must "allege[] that she has

been intentionally treated differently from others similarly situated."  *Willowbrook v.*

*Olech*, 528 U.S. 562, 564-65 (2000); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1312

(10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first

make a threshold showing that they were treated differently from others who were

similarly situated to them.").  The complaint makes no allegation that federal authorities

(let alone any federal authority in particular) saddled Dr. Redd with any burden that any

"similarly situated" individual – as that term is understood in the equal protection context

– was not.  In fact, to the extent that the complaint identifies any person similarly situated

to Dr. Redd (those who illegally possessed Native American artifacts), it suggests that

---

[37] Plaintiff attempts to bring a claim for "inhumane treatment" under the Fifth
Amendment, presumably as a substantive due process claim.  *See* Compl. p. 27 (Eleventh
Cause of Action).  However, the Supreme Court has made clear that "*all* claims that law
enforcement officers have used excessive force – deadly or not – in the course of an
arrest … should be analyzed under the Fourth Amendment and its 'reasonableness'
standard," and not under any other constitutional provision.  *Graham v. Connor*, 490 U.S.
at 395.  As a result, none of the complaint's claims regarding the treatment of Dr. Redd
during his arrest can form the basis of a Fifth Amendment substantive due process claim.
*See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (a claim based on an allegedly
unfounded arrest was improperly brought as a substantive due process rather than Fourth
Amendment claim); *Chavez v. Martinez*, 538 U.S. 760, 773 n.5 (2003) ("*Graham*
foreclosed the use of substantive due process analysis in claims involving the use of
excessive force in effecting an arrest.").

agents treated all subjects of the investigation equally, *i.e.* all were arrested and at least one committed suicide thereafter.  *See* Compl. ¶ 28 (24 arrests made on the same day as Dr. Redd's); *id.* (19 of 24 arrests were of Utah residents, like Dr. Redd); *id.* at ¶ 59 (criticizing agents' "acts and omissions" "not only just at the Redd's [*sic*] residence but throughout Blanding"); *id.* at ¶ 58 (another man "also accused of 'looting artifacts' died of two self-inflicted gunshot wounds" in the week following Dr. Redd's suicide).  As a result, they fail to state a claim at all, much less one for the violation of a clearly-established constitutional right.  *See Murdock v. Walker-Shedd*, No. 11-0391, 2011 WL 2939409, *2 (N.D. Okla. Jul. 19, 2011) (slip) (rejecting equal protection claim by plaintiff who "claim[ed] to have been denied parole because he is white" because he "failed to point to any similarly situated non-white inmates who were given preferential treatment").

### b.  Qualified immunity bars the "takings" claim (Count 12).

Because this Court ought to decline to imply a *Bivens* remedy for a "taking" under the circumstances presented in this case, the Court need not even address whether Plaintiff has plausibly alleged an unconstitutional taking.  *See infra* Sections II, III. Should it choose to do so, however, the claim fails for obvious and simple reasons.  As an initial matter, Dr. Redd's estate has no standing to seek recovery for property "taken" from Mrs. Redd after Dr. Redd's death.  *See* Compl. ¶ 61 ("Defendants … took advantage of Dr. Redd's widow's fragile condition and … coerced her into giving up all of the artifacts taken from her home" and failed to "return a number of" unspecified "artifacts and personal property" to her as promised.).[38]  In any event, the complaint does not

---

[38] *See Palazzolo v. Rhode Island*, 533 U.S. 606, 642 (2001) (plaintiff "has no right to recover compensation for the value of property taken from someone else"); *Dohaish v.*

(continued...)

explain how, exactly, the defendants supposedly engaged in coercion or what specific property Mrs. Redd accuses them of failing to return.[39]  Such vague and conclusory allegations fail to put the individual federal defendants on notice of the claims against them and, as a result, must be dismissed at step one for failure to allege a constitutional violation at all.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1076-77 (10th Cir. 2008) ("The insistence on *factual* allegations" "ensur[es] that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense.") (citing *Twombly*, 127 S. Ct. at 1964).  Given this, the allegations certainly could not pass step two.  Finally, as with the criticisms of the indictment, *see supra* Section I(B)(1)(a), the doctrine of judicial estoppel bars Mrs. Redd from using this lawsuit to argue that agents coerced her into giving up artifacts, when she agreed in her 2009 guilty plea to forfeit the proceeds of her offenses, including items seized on June 10, 2009,  Ex. 3, p.5, and in doing so expressly denied that she had been induced to do so via "threats, promises, or representations," *id.* at p.7, and "agree[d] to hold the United States" and "its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by [the] agreement," *id.* p.5.

---

[38](...continued)
*Tooley*, 670 F.2d 934, 936 (10th Cir.), *cert. denied*, 459 U.S. 826 (1982) ("When we say standing, we mean that the § 1983 civil rights action is a personal suit.  It does not accrue to a relative, even the father of the deceased.").

[39] *Cf. Song v. PIL, LLC*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill 2009) ("The problem is that [plaintiff] fails to allege in his complaint that a specific fund or specifically-identifiable money was converted, or that this specific fund belonged to him at all times."); *In re Musicland Holding Corp.*, 386 B.R. 428, 440 (S.D.N.Y. 2008) ("The allegation … is insufficient on its face to state a claim for conversion, because it fails to identify specific proceeds that were allegedly converted.").

### c.   Qualified immunity defeats Plaintiffs' right-to-counsel and self-incrimination claims (Counts 13 and 14).

The Thirteenth Cause of Action claims that Defendants violated Dr. Redd's "Sixth Amendment … right to counsel."  Compl. pp. 27-28.  The Fourteenth Cause of Action alleges that Defendants violated Dr. Redd's "Fifth and Sixth Amendments [*sic*] right to counsel by failure to advise Plaintiff of his Fifth Amendment right against self incrimination and his Sixth Amendment right to counsel at the time he was detained, searched, [and] interrogated."  Compl. p. 28.  These allegations presumably refer to the "interrogation in the garage," the only verbal exchange described in the complaint.  *Id.* ¶ 32.  However, not a single factual allegation in the complaint even suggests that Dr. Redd was not advised of his Fifth and Sixth Amendment rights, that Dr. Redd requested an attorney, or that any particular federal official denied that request.  *Cf. United States v. Brown*, 287 F.3d 965, 973 (10th Cir. 2002) (criminal defendant's rights not violated because his "ambiguous responses" to questioning "did not invoke his right to counsel").

Moreover, mere failure to warn an individual of his right to counsel or against self-incrimination cannot provide an independent basis for a *Bivens* claim.  "To invoke the Fifth Amendment right to have counsel present during questioning requires at a minimum some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *United States v. Uribe-Galindo*, 990 F.2d 522, 526 (10th Cir. 1993) (internal citation and quotation omitted).  Nor does failure to give *Miranda* warnings support a clearly-established constitutional tort claim.[40]  And, no claim for a Self-Incrimination Clause

---

[40] *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (officer's "failure to read *Miranda* warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action"); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976)

(continued...)

violation can lie in the absence of any evidence that the accused's words were used "against him in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). Indeed, such a claim "can only be described as frivolous and treading dangerously close to violating Rule 11(b)." *Kortlander v. Cornell*, No. 10-155, 2011 WL 4036143, at *15 (D. Mont. Sept. 12, 2011) (unpublished). As such, Plaintiff cannot show a violation of the Constitution, let alone a clearly-established one. Thus, Plaintiff fails at step one and certainly cannot pass step two.

### 3.  Qualified immunity precludes Plaintiff's Eighth Amendment (Counts 15 and 16) and Fourteenth Amendment (Count 17) claims.

Plaintiff's Fifteenth and Sixteenth Causes of Action allege Eighth Amendment violations. *See* Compl. pp. 28-29. In the Seventeenth Cause of Action, Plaintiff alleges that Defendants violated Dr. Redd's "rights under the Fourteenth Amendment ... by violating [his] ... right to equal protection afforded under the Constitution of the United States and the State of Utah and the denial of life, liberty and pursuit of happiness without due process and equal protection under the law." Compl. p. 29. None of these claims can survive step one of the qualified immunity inquiry.

The Eighth Amendment only "protect[s] those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Rochin v. California*, 342 U.S. 165, 172-74 (1952). It was "inapplicable" to Dr. Redd because he was not convicted or "serving a sentence for a criminal conviction." *See Slayton v. Willingham*, 726 F.2d 631, 634 n.7 (10th Cir.

---

[40](...continued)
("No rational argument can be made in support of the notion that the failure to give Miranda warnings subjects a police officer to liability under the Civil Rights Act."); *Brown v. Booker*, No.07-3103, 2008 WL 215723, *2 (D. Kan. Jan. 24, 2008) (unpublished) ("Plaintiff's bare reference to the lack of *Miranda* warnings by the deputy sheriff are insufficient to state a cognizable claim under 42 U.S.C. § 1983.").

1984).[41]   Along the same lines, the Fourteenth Amendment's "plain language" "makes clear that it applies to state governments, not the federal government." *Kortlander*, 2011 WL 4036143 at *10 (citing *In re Young*, 141, F3d 854, 858 (8th Cir. 1998), *cert. denied*, 525 U.S. 811 (1998)).[42]   Nor can the violation of a state constitution give rise to *Bivens* liability. *See United States v. Green*, 178 F.3d 1099, 1105 (10th Cir. 1999) ("[T]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.").[43]   Therefore, all counts arising out of those claims fail to establish a constitutional violation, let alone a clearly-established one.

---

[41] *See also Hampel v. City of Wichita*, No. 06-1091, 2006 WL 3240926 at *1 (D. Kan. Nov. 7, 2006) (unpublished) ("Since Hampel was an arrestee rather than a convicted prisoner, the Eighth Amendment is inapplicable."); *Davis v. Hill*, 173 F. Supp. 2d 1136, 1146 (D. Kan. 2001) ("Defendants assert this claim is meritless because the Eighth Amendment is only applicable to post-conviction incarcerations.  The court agrees and finds summary judgment to be appropriate."); *Hewitt v. Truth or Consequences*, 758 F.2d 1375 (10th Cir.), *cert. denied*, 474 U.S. 844 (1985) (allegation of excessive force during arrest does not state an Eighth Amendment claim on which relief can be granted).

[42] *See Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) ("The Fourteenth Amendment protects against actions by states but here, the federal government is the subject of petitioner's complaints[,] making the Fourteenth Amendment inapplicable.").

[43] *See also Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 n.2 (10th Cir. 2006) ("[E]ven if New Mexico law prohibited such an arrest, that would be irrelevant to [plaintiff's] constitutional claim[.]"); *United States v. Pratt*, 355 F.3d 1119, 1124 n.3 (8th Cir. 2004) ("limitations on officers' arrest power imposed by state law [are] irrelevant to the constitutionality of a search incident to arrest"); *Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1128 (D. Kan. 2000) ("The protection of rights derived purely from state law … is … beyond the pale of both federal court jurisdiction and the substantive remedial provisions of the Civil Rights Act") (quoting *Taylor v. Nichols*, 409 F. Supp. 927, 933 (D. Kan. 1976)); *cf. Schweiker v. Chilicky*, 487 U.S. 412, 448 (1988) (Brennan, J., dissenting) ("[I]n *Bivens* itself we rejected the suggestion that state law should govern the liability of federal officials charged with unconstitutional conduct[.]").

## II.     *Heck v. Humphrey* mandates rejection of any claim based on the decision to search the Redds' home and any claim for "unlawful taking" of items seized there.

Plaintiff's "takings" claim essentially argues that unspecified federal officers unlawfully took property without due process of law when they searched the Redd home and permanently seized items taken during that search. *See* Comp., p.27. The Court must reject this Twelfth Cause of Action for an allegedly improper "taking," as well as any argument that federal agents lacked probable cause to search the Redd home (Count Two) because they represent a collateral attack on Mrs. Redd's criminal conviction and plea agreement. The Supreme Court has made abundantly clear that civil suits "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck v. Humphrey*, 512 U.S. 477, 485 (1994). As a result, courts have no choice but to dismiss any suit where "judgment in favor of the plaintiff would necessarily imply the invalidity of [a] conviction or sentence" "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. This bar extends even to suits in which the plaintiff's success "would *implicitly* question the validity of a conviction or duration of a sentence." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (emphasis added). Sentences insulated from collateral attack under *Heck* include punitive terms of plea agreements. *See Neidig v. Rendina*, 298 Fed. Appx. 115, 116-17 (3rd Cir. 2008) (unpublished) (affirming district court's dismissal of claims where the plaintiff "sought to recover property that he had agreed to forfeit as part of his plea agreement"); *Peterson v. Lowry*, No. 97-35795, 1998 WL 479427, *1 (9th Cir. Jul. 24, 1998) (table, unpublished) (citing *Heck*, plaintiff "may not challenge his sentence or plea agreements in this action").

Thus, *Heck* bars any cause of action for "taking … without due process of law," Compl. ¶ 61,  items that Mrs. Redd – who seeks to proceed on behalf of her husband's estate – forfeited as part of her plea agreement.  Though the complaint alleges that Mrs. Redd was "coerced … into giving up all of the artifacts taken from her home on June 10, 2009, and July 7, 2009," she freely and voluntarily forfeited seized artifacts in exchange for a reduced sentence and, in her criminal proceedings, explicitly denied any coercion in doing so.  *See* Ex. 3 (guilty plea).  She also agreed "to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered" by the plea agreement."  *Id.* at p. 5.  To the extent that she now claims that the forfeiture was not voluntary, such allegations fell within the purview of the criminal court that considered her plea, not this civil action.  The same is true with respect to claims related to the search of the Redds' home, the validity of which was integral to Mrs. Redd's conviction and could have been challenged in criminal court. The criminal judgment remains valid and *Heck* forbids using this lawsuit to collaterally attack it.[44]

---

[44] *See Johnson v. Pottawotomie Tribal Police Dept.*, 411 Fed. Appx. 195, 200 (10th Cir. 2011) (unpublished) (dismissing claim where plaintiff was "attempting to seek relief through a § 1983 complaint as an end-run around the appeal waiver in his plea agreement"); *see also McGee v. United States*, No. 08-154, 2009 WL 909589, *4 (W.D. Mich. Mar. 31, 2009) (slip) (dismissing constitutional claim regarding real and personal property that were subject to criminal forfeiture as part of a plea agreement); *Penland v. Carolina First Bank,* No. 07-3109, 2008 WL 1736858, *4 (D.S.C.  Apr. 15, 2008) (unpublished) ("To the extent the defendant's seizure of the plaintiff's motor home and contents therein was authorized by the Orders of forfeiture entered against the plaintiff … the above-captioned case is subject to summary dismissal[.]"); *Powell v. Keller,* No. 07-121, 2007 WL 4139645, *1-2 (W.D.N.C. Nov. 15, 2007) (unpublished) ("[I]t is well settled that before the plaintiff can recover damages for an [*sic*] forfeiture of the subject property, or can seek to have that property returned, he must first prove that the resulting convictions and sentences have been" invalidated or at least called into question by a federal court.).

### III.    The Tucker Act precludes implication of a *Bivens* remedy.

Whether or not *Heck* bars such claims, this Court should reject Plaintiff's attempt to pursue an individual damages action for an allegedly unlawful taking on the basis that the Tucker Act already provides a cause of action for improper takings by federal officials.  A *Bivens* remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances … unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  Before fashioning one, "a court *must* take into account two considerations: first, "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages"; and second, whether there are "'any special factors counselling hesitation before authorizing a new kind of federal litigation.'"  *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983); *see also Chappell v. Wallace*, 462 U.S. 296, 298 (1983).  For example, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," the Supreme Court has refused to "create[] additional *Bivens* remedies." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988); *see Petrini v. Howard*, 918 F.2d 1482, 1484 (10th Cir. 1990) ("creation of a *Bivens* remedy" for First Amendment retaliation "unwarranted" for plaintiff who "could have availed herself of the procedures and remedies of the" Civil Service Reform Act "framework").  This holds true even where the existing remedial mechanisms offer the specific plaintiff at issue no relief.  *See Brothers v. Custis*, 886 F.2d 1282, 1284 (10th Cir. 1989) ("The absence of statutory relief for a constitutional violation … does not by any means necessarily imply that courts

should award money damages against the officers responsible for the violation.'") (quoting *Chilicky*, 487 U.S. at 421-22).

The Tucker Act, 28 U.S.C. § 1491, expressly provides a cause of action against the United States for any allegedly illegal "taking" by a federal officer. *See Eastern Enter. v. Aphel*, 524 U.S. 498, 520 (1998) ("a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance"); *Lloyd v. United States*, No. 99-3347, 1999 WL 759375, *3 (N.D. Ill. Sept. 3, 1999) (unpublished) ("[T]he United States may be sued for a taking of property in excess of $10,000 only in the Court of Claims, and a *Bivens* action is not a way around that jurisdictional limitation.").[45]  The overwhelming weight of authority indicates that the existence of the Tucker Act precludes implication of a *Bivens* remedy for an allegedly unlawful taking.  *See Kortlander*, 2011 WL 4036143, at *11 ("there is no *Bivens* cause of action for unlawful taking in violation of the Fifth Amendment because Congress has expressly provided a cause of action for takings under the Tucker Act"); *AAA Pharmacy, Inc. v. Palmetto GBA, LLC*, No. 07-1221, 2008 WL 5070958, *5 (W.D. Okla. Nov. 25, 2008) (unpublished)  ("[t]he availability of possible relief under the Tucker Act is a

---

[45] Though district courts may hear "takings" claims of $10,000 or less, *see* 28 U.S.C. § 1346(a)(2), a suit against the United States under the Tucker Act remains the exclusive remedy.  *See Clouser v. Espy*, 42 F.3d 1522, 1539 (9th Cir. 1994), *cert. denied*, 515 U.S. 1141 (1995) ("plaintiffs may not maintain a suit for equitable relief, but rather are limited to the exclusive remedy of a suit for money damages under the Tucker Act"); *Bayou Des Familles Dev.  Corp. v. United States Corps of Eng'rs*, 541 F. Supp. 1025, 1042 (E.D. La.), *aff'd*, 709 F.2d 713 (5th Cir.) (table), *cert. denied*, 465 U.S. 1065 (1984) ("Plaintiffs' exclusive remedy for claims of uncompensated takings … rests with the Court of Claims under the Tucker Act.").

special factor that counsels against *Bivens* liability.").[46]  This Court should reach the same conclusion and dismiss the Twelfth Cause of Action with prejudice.

## IV.     This Court lacks personal jurisdiction over Defendants Kice and McTighe.

"A party invoking the jurisdiction of the federal courts has the burden of proving that federal jurisdiction does exist." *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727 (10th Cir. 1984).  This includes "establishing personal jurisdiction over [each] defendant," *Bell Helicopter Textron, Inc. v. Heligwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004), using "well-pled (that is, plausible, non-conclusory, and non-speculative) facts."  *Shrader v. Biddinger*, 633 F.3d 1235, 1242 (10th Cir. 2011) (quoting *Dudnikov*, 514 3d at 1070).  The Court may properly exercise personal jurisdiction only over defendants with "minimum contacts" with "the forum State."  *Intercon., Inc. v. Bell*

---

[46] *See Trotter, Inc. v. Watkins*, 869 F.2d 1312 (9th Cir. 1989) ("we are unaware of any case extending *Bivens* to the fifth amendment's takings clause"); *Kizas v. Webster*, 707 F.2d 524, 534 (D.C. Cir. 1983) ("We are unaware of any other case extending *Bivens* to the takings clause."); *Munns v. Clinton*, No. 10-00681, 2011 WL 4566004, *28 (E.D. Cal. Sept. 29, 2011) (unpublished) ("in light of the availability of alternative remedies to protect Plaintiffs' interests, their Takings claim against the individual Defendants must fail"); *F.E. Scrase v. Dickinson*, No. 09-02398, 2011 WL 3714632, at *1 (D. Nev. Aug. 24, 2011) (slip) ("because there is an alternative, equally effective remedy available for alleged Takings Clause violations – the Tucker Act, 28 U.S.C. § 1491 – this Court recognizes … that there is no implied private right of action under *Bivens*"); *Reunion, Inc. v. F.A.A.*, 719 F. Supp. 2d 700, 710 (S.D. Miss. 2010) ("a plaintiff does not have an implied cause of action under *Bivens* for a Fifth Amendment takings claim because there is an express cause of action for such a claim under the Tucker Act"); *Anoushiravani v. Fishel*, No. 04-212, 2004 WL 1630240, *8 (D. Or. Jul. 19, 2004) (unpublished) ("Plaintiff does not have an implied cause of action under *Bivens* for a Fifth Amendment takings claim because he has an express cause of action for such a claim under the Tucker Act."); *United States v. Green*, 33 F.Supp.2d 203, 226-27 (W.D.N.Y. 1998) (dismissing *Bivens* crossclaim because defendants had not availed themselves of the Tucker Act); *Wittmann v. United States*, 37 Fed. Cl. 239, 241 (1997) ("The district court … dismissed the *Bivens* claim on the ground that the existence of a possible remedy in the Court of Federal Claims pursuant to the Tucker Act precluded the *Bivens* claim against the individual IRS employees.").

*Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Plaintiff can demonstrate that such minimum contacts exist as to each defendant by showing either (1) "specific jurisdiction" – that "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and [that] the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum," *In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); or (2) that the defendant has "continuous and systematic" contacts with the forum state such that the court has "general jurisdiction" over him or her, *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984)).

Plaintiff has offered no such allegations with respect to any defendant.  However, in the interest of ensuring just and efficient resolution of this matter, those defendants who consider themselves legitimately subject to suit in this forum will not raise the issue of personal jurisdiction.[47]  Defendants Kice and McTighe, however, are non-Utah residents not alleged to have had any personal involvement in the events that took place at the Redd home.  Ex. 10 (McTighe declaration); Ex. 11 (Kice declaration).  As to them, Plaintiff offers only conclusory allegations of conspiracy and the blanket claim that all "Defendants were present at the Redd residence from 6:40 A.M. on June 10, 2009, until 5:45 P.M. that evening."  Compl. ¶ 30.  "Mere allegation[s] of conspiracy, without some

---

[47] These include Defendants (1) Palma, (2) Barnes, (3) Range, (4) Good, (5) Edwards, (6) Love, (7) Footlik, (8) Rogers, (9) Kisabeth, (10) Viti, (11) Vender veer, (12) Sierra, (13) Fuhrman, and (14) Wilson.

sort of prima facie factual showing" "cannot be the basis of personal jurisdiction of [alleged] co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972).[48]  More importantly, "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).  Here, what little jurisdictional allegations exist are wholly conclusory and have been directly controverted by Defendant Kice's and Defendant McTighe's declarations.  Plaintiff can establish neither specific nor general jurisdiction over them.[49]  As a result, claims against Defendants Kice and McTighe must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## CONCLUSION

For the reasons set forth in this Memorandum, the individual federal defendants respectfully request that the Court dismiss all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

---

[48] *See also Pro Fit Management v. Lady of America Franchise Corp.*, No. 08-2662, 2010 WL 4810227, *3 (D. Kan. Nov. 19. 2010) ("to the extent plaintiff attempts to establish personal jurisdiction over individual defendants on the basis of conclusory allegations regarding collective conduct … the Court will not consider those allegations").

[49] "[A] party may go beyond allegations contained in the complaint" in order to challenge jurisdiction.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion."  *Id.*

Dated: <u>January 19, 2012</u>                    Respectfully submitted,

                                              TONY WEST
                                              Assistant Attorney General

                                              C. SALVATORE D'ALESSIO, JR.
                                              Acting Director, Torts Branch, Civil Division

                                              MARY HAMPTON MASON
                                              Senior Trial Counsel, Torts Branch

                                              ***s/ Laura K. Smith***
                                              LAURA K. SMITH
                                              Trial Attorney, Torts Branch
                                              U.S. Department of Justice, Civil Division
                                              Constitutional and Specialized Tort Litigation
                                              P.O. Box 7146, Ben Franklin Station
                                              Washington, D.C. 20044
                                              (202) 616-0419 (phone)
                                              (202) 616-4314 (fax)
                                              Laura.smith2@usdoj.gov

                                              ATTORNEYS FOR THE INDIVIDUAL
                                              FEDERAL DEFENDANTS